UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                                Case No. 13-20764
                              Plaintiff,

v.                                              Paul D. Borman
                                                United States District Judge

BRYAN SORRELL, *et al.*,                        David R. Grand
                                                United States Magistrate Judge
                              Defendants.
_____/

### REPORT AND RECOMMENDATION TO DENY PETITIONER'S MOTION UNDER § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (ECF No. 774)

Before the Court is *pro se* Petitioner Bryan Sorrell's ("Sorrell") Motion under § 2255 to Vacate, Set Aside, or Correct Sentence.  (ECF No. 774.)  The government filed a response (ECF No. 802), and Sorrell filed a reply (ECF No. 812.)  Sorrell also filed two "supplements" to his § 2255 motion.  (ECF Nos. 822, 826.)  Sorrell's § 2255 motion has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 825.)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Sorrell's Motion under § 2255 to Vacate, Set Aside, or Correct Sentence **(ECF Nos. 774)** be **DENIED**.

## II.    REPORT

### A.    Background

The Phantom Motorcycle Club ("PMC" or "Phantoms") is an "outlaw" motorcycle club that has chapters in Michigan and numerous other states, with Detroit being the "mother chapter." (ECF No. 751, PageID.11395.) As an outlaw motorcycle club, PMC has a hierarchical structure with the following purposes: preserving and protecting the power, territory and reputation of the club, promoting and enhancing the club and its members and associates' activities, maximizing profits, and extorting money from other clubs. (*Id.*; ECF No. 201, PageID.1664.) Sorrell was a member of the PMC's Inkster, Michigan chapter. (ECF No. 751, PageID.11395.)

PMC members wore leather vests or jackets ("rags" or "colors") with a Phantom emblem on the back. (*Id.*; PageID.11394-95; ECF No. 201, PageID.1664.) Other outlaw and regular motorcycle clubs also have rags or colors that are distinctive to their organizations. (*Id.*) Rags are of significant value to the Phantoms and other motorcycle clubs, so much so that members of clubs will attempt to rob rags from other clubs to exert their dominance. (*Id.*) The indictment in this case contains many allegations of criminal conduct by Sorrell as a member of the PMC, including that in January 2013, he "demanded and took the 'rags' from members of the Black Bottom Motorcycle Club with implicit threats of violence;" "assaulted and took the 'rags' of a member of the Hell Lovers Outlaw Motorcycle Club;" went looking for Satan Sidekick members, and then fought with and shot at one of its members in an attempt to take his "rags;" "plotted with other [PMC] members . . . to murder all members of the Hell Lovers Outlaw Motorcycle Club who

would be at the members' Detroit, Michigan clubhouse following the funeral of the three members that [co-conspirator/defendant Antonio Johnson] ordered to be murdered." (ECF No. 201, PageID.1669-72.)

### i. The Charges

The charges in this case arise out of a series of confrontations between members of the Phantom Motorcycle Club and rival motorcycle clubs. (ECF No. 751, PageID.11395.) Sorrell was initially indicted on October 23, 2013. (ECF No. 10.) The operative third superseding indictment charged Sorrell with the following:

- Count One, RICO Conspiracy, in violation of 18 U.S.C. § 1962(d);

- Count Five, Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(3) §2;

- Count Six, Conspiracy to Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1956(a)(6);

- Count Seven, Use and Carry of a Firearm During, and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c); and

- Count Eight, Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5).

(ECF No. 201, PageID.1657-1682.)

### ii. Jury Trial and Conviction

Sorrell and some of his co-defendants were tried before a jury in the Eastern District of Michigan. The trial took place from February 3, 2015 to March 4, 2015, and the government presented two dozen or so witnesses. (ECF Nos. 439-465.) The jury convicted Sorrell on all Counts. (ECF No. 469.) In its opinion upholding Sorrell's convictions, the Sixth Circuit provided the following description of the salient facts:

The charges and convictions in this case stem from a series of PMC confrontations with rival motorcycle clubs. PMC is an "outlaw" motorcycle club that has chapters in Michigan, Ohio, and six other states. The Detroit chapter is the "mother chapter." PMC has a hierarchical structure, with a national president, vice-president, enforcers, and treasurer. Each chapter also has a chapter president and vice-president. PMC has a set of by-laws, members are required to pay dues, and chapters pay money to the national treasurer.

PMC places high value on being the toughest, or "baddest," outlaw motorcycle club. One way to establish this dominance is to take the leather vests worn by members of rival clubs (known as "rags"), which are important symbols in motorcycle club culture. This is considered the ultimate sign of disrespect. PMC members are not allowed to let rivals take their own rags, and they must resist with force or use violence to get them back. PMC's rival motorcycle clubs in the Detroit area include Hell Lovers and Satan's Sidekicks.

* * *

The jury heard testimony that Sorrell shot Satan's Sidekick member Leon McGee after PMC president [co-defendant Antonio] Johnson instructed PMC members to take Satan's Sidekicks' rags and that [another co-defendant] participated in the fight at a Hell Lovers' party on Johnson's orders and periodically supplied guns to other Phantoms. . . . Based on this evidence, a rational jury could certainly find that [] Sorrell participated in PMC's affairs.

* * *

There was also extensive testimony showing that PMC members raided a Hell Lovers "bridge-the-gap" party in 2013 and that president Johnson instructed members to "tear the party up, act as Phantoms." Then, in September 2013, after Sidekicks disrespected Johnson, armed PMC members went on a mission to take Sidekicks' rags by force. After spotting Sidekick Leon McGee leaving another club's clubhouse, the Phantoms attacked, and Sorrell shot McGee. The prosecution also introduced evidence of a PMC conspiracy to murder members of the rival Hell Lovers motorcycle club in retaliation for a Phantom's death, though this plan was disrupted when the ATF and FBI executed search warrants on [co-defendant Marvin] Nicholson's, Johnson's, and another Phantom's homes in October 2013.

* * *

The prosecution introduced sufficient evidence that Sorrell [and certain co-defendants] were involved in a conspiracy with other Phantoms that included an agreement to commit at least two predicate acts. . . . Sorrell participated in the raid on the Black Bottoms, was present at the bridge-the-gap party, shot McGee, and participated in the plot to murder Hell Lovers.

* * *

[The evidence was also sufficient to] sustain [Sorrell's] conviction[] for Violent Crimes in Aid of Racketeering ("VICAR"), 18 U.S.C. § 1959(a). . . . A VICAR conviction requires that the government prove the defendant committed the predicate crime of violence. The defendants here were convicted of violent crimes related to two primary incidents: the shooting of Leon McGee and the conspiracy to murder Hell Lovers. . . . In September 2013, after members of Satan's Sidekicks disrespected Johnson, Johnson instructed PMC members to take Sidekicks' rags by force. PMC members gathered at the PMC clubhouse (Nicholson, Jackson, Sorrell, and [co-defendant Sherman] Brown were all present) and from there left to track down Sidekicks. Although the mission was to steal rags, several Phantoms, including Sorrell, were armed, and at one point Nicholson asked Miller whether everyone was armed, and Miller responded that Brown was bringing his gun. Nicholson, Sorrell, and Brown, along with other PMC members, staked out a rival's clubhouse, and when Leon McGee emerged, Sorrell and another Phantom attacked. Sorrell punched McGee, and McGee stabbed Sorrell, at which point Sorrell shot McGee.

* * *

All defendants except [one not relevant to Sorrell's motion] were convicted of conspiracy to commit murder in aid of racketeering related to the PMC plot to murder Hell Lovers. After PMC member Steven Caldwell was murdered while riding his motorcycle in late September 2013, PMC president Johnson held a meeting in which he called for retaliation against Hell Lovers—the suspected culprits. At the meeting—with Nicholson, Sorrell, Jackson, and Brown all in attendance—Johnson announced a plan to murder three Hell Lovers, which would cause other Hell Lovers to travel to Michigan for the funerals, at which time PMC would attack and kill a large number of

them. Nicholson dispensed orders to PMC members to carry out the first murder, and Nicholson and other PMC members began preparations. Nicholson's and Johnson's direct involvement in the conspiracy easily meet the sufficiency standard.

Additionally, Sorrell, Brown, and Jackson all attended the planning meeting and individually made comments indicating agreement with the plot to kill Hell Lovers. In a recorded conversation with government informant Miller, Sorrell referenced Johnson's plan to attack Hell Lovers and stated that that he was "waiting for the phone call" and that he was "itching" to retaliate. [] . . . Thus, a rational jury could have found that Sorrell [] participated in the conspiracy [to commit murder in aid of racketeering].

\* \* \*

Johnson, Nicholson, and Sorrell next challenge their convictions under 18 U.S.C. § 924(c) for using or carrying a firearm during and in relation to a crime of violence, or aiding and abetting that offense, related to the McGee shooting. To be convicted of violating § 924(c) under an aiding and abetting theory, a defendant must have advance knowledge that the plan would include a firearm. [] This advance-knowledge requirement does not mean that a defendant must know in advance that his confederate will *actually use* the gun. Instead, the government must show that the defendant "decided to join in the criminal venture . . . with full awareness of its scope . . . including its use of a firearm." []

Sorrell, Nicholson, and Johnson each argue that they did not have this requisite advance knowledge because the McGee incident was not supposed to involve a gun fight, and instead Phantoms were only supposed to steal Sidekicks' rags. We disagree. First of all, there is overwhelming evidence—including Sorrell's own statements caught on recording—that Sorrell actually shot McGee.[1] Thus, there is no

---

[1] In a subsequent Sixth Circuit decision regarding Sorrell's post-appeal motion for new trial based on newly discovered evidence, the Court, in discussing these audio recordings, wrote:

Sorrell stated that McGee was unaffected by Valdes' punch, so he went to assist Valdes, and McGee stabbed Sorrell when he and Valdes were fighting with McGee. Sorrell said to Miller that he grabbed a gun, and that he knew he had a gun in his hand. Sorrell stated, "I'm the one who shot him", referring to McGee, and that he heard another shot. Miller told Sorrell that Valdes was saying that Valdes was the one that shot McGee. Sorrell responded, "[Valdes] probably shot him too. But I

reason to even rely on aiding and abetting liability for Sorrell. . . .
There was sufficient evidence presented at trial to sustain each
defendant's § 924(c) conviction.

(ECF No. 751, PageID.11394-407.)

### iii.    Sentencing

At sentencing, the Honorable Paul D. Borman, who presided over Sorrell's trial,

sentenced him to a total of 252 months in prison, broken down as follows: "132 months on

Counts 1ss, 5ss & 8ss; 36 months on Count 6ss (to run concurrently with the sentence

imposed on Counts 1ss, 5ss & 8ss;[)] 120 months on Count 7ss, to run consecutively to the

sentence imposed on Counts 1ss, 5ss, 6ss & 8ss; for a total of 252 months." (ECF No. 635,

PageID.7593.)

### iv.    Appeal and § 2255 Motion

On September 3, 2015, Sorrell appealed his conviction and sentence to the United

States Court of Appeals for the Sixth Circuit (ECF No. 621.)  As discussed above, on

November 17, 2017, the Sixth Circuit affirmed his convictions as to all Counts.  (ECF No.

751.)  Sorrell then moved for a new trial based on the discovery of new evidence – a report

dated prior to Sorrell's trial "from a separate investigation regarding one of its witnesses

in this case, Roger 'June' Valdes . . . [which indicates] that Valdes, who was incarcerated

at the time, had told other inmates that he was misleading law enforcement in their

---

know I shot [him]."  Later in the conversation, Sorrell stated, "I probably did shoot
him in the face[.]"  There was also an exchange between Miller and Sorrell about
Sorrell giving Miller a gun after the incident.

(ECF No. 823, PageID.11759.)

investigation of Sorrell's case."  (ECF No. 823, PageID.11754.)  However, Judge Borman denied Sorrell's motion, and the Sixth Circuit affirmed, finding – in large part due to the audio recordings discussed above – that "the evidence was not material to Sorrell's trial and its absence does not undermine our confidence in the verdict."  (*Id.*; *id.*, PageID.11759.)

Sorrell then filed the instant § 2255 motion on February 11, 2019, raising the following four issues: (1) his trial and appellate counsel provided ineffective assistance when they failed to challenge his involvement in interstate commerce; (2) he is actually innocent of the § 924(c) charge because no weapon was offered into evidence and he was not charged with a "prerequisite crime that would trigger the statute;" (3) he is actually innocent of the § 924(c) charge because he does "not have a prior conviction to trigger a violation of this statute[,] nor is there a substantive offense which was committed to trigger the statute;" and (4) his trial counsel provided ineffective assistance by failing to introduce "state court proceedings testimony . . . where [McGee] gave a different story to the state police officers than in federal court."  .  (ECF No. 774.)

## B.    Legal Standards

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" based on a claim "(1) 'that the sentence was imposed in violation of the Constitution or the laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' or (4) that the sentence 'is otherwise subject to collateral attack.'"  *Hill v. United States*, 368 U.S. 424,

426-427 (1962).  To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).  A § 2255 petitioner seeking to set aside his sentence has the burden of establishing his case by a preponderance of the evidence.  *McQueen v. U.S.*, 58 Fed. App'x 73, 76 (6th Cir. 2003).

A petitioner seeking to establish ineffective assistance of counsel must satisfy the standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, he must show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Counsel's performance is deficient only where it falls "below an objective standard of reasonableness."  *Id.* at 687-88.  Judicial scrutiny of counsel's performance "must be highly deferential."  *Id.* at 689.  A reviewing court should avoid second-guessing counsel and must ensure that "every effort is made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*

Second, the petitioner must show that counsel's deficient performance prejudiced the defense.  *Id.* at 687.  To satisfy the prejudice prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

### C.    Analysis

      *i.*    *Ground One – Ineffective Assistance of Counsel Regarding Interstate Commerce Challenge*[2]

Sorrell's first argument is that his trial and appellate counsel were ineffective for failing "to challenge the defect in instituting the prosecution by challenging the commerce requirement for my own actions alleged by the Government."    (ECF No. 774, PageID.11492.)   In other words, Sorrell appears to be arguing that the government was required to prove that the specific conduct he is accused of engaging in directly affected interstate commerce.  This argument fails both procedurally and substantively.

Procedurally, this claim is not properly before this Court as the Sixth Circuit has already rejected it.  The law is clear that a "§ 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996)).  Moreover, a defendant may not circumvent this rule of law by recasting previously rejected arguments as ineffective assistance of counsel claims.  *See Clemons v. United States*, No. 3:01-cv-496, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005) (citing *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)) ("[A movant] cannot use a § 2255

---

[2] In his reply brief, Sorrell seems to indicate that he wishes to waive, without prejudice, adjudication of his claims other than those related to the § 924(c) conviction.  (ECF No. 812, PageID.11688) ("Petitioner will like to proceed and argue his § 924(c) claims only, and will at a later date, argue his points for his other claims pleaded at grounds 1 and 4.")  However, it is not clear what "later date" would be appropriate for Sorrell to press these other grounds, and the Court will address them herein for completeness.

proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely to him on direct appeal.").

Sorrell unsuccessfully raised this issue on direct appeal with the Sixth Circuit, with that Court explaining:

> To meet RICO's "affecting interstate commerce" requirement, the government need only prove that ***the enterprise as a whole*** engaged in interstate commerce or that its activity affected interstate commerce. *See United States v. Qaoud*, 777 F.2d 1105, 1116 (6th Cir. 1985) (noting that it is the conduct of the "criminal enterprise itself," rather than the "individual defendant," that must affect interstate commerce). If an enterprise engages in economic activity, then even a *de minimis* connection to interstate commerce is sufficient to meet the interstate more significant effect on interstate commerce. *See Waucaush v. United States*, 380 F.3d 251, 255–56 (6th Cir. 2004).
>
> At trial, the jury heard extensive testimony regarding PMC's interstate economic activities, such as paying money toward a national fund and transporting stolen motorcycles across state lines. Testimony also evidenced members' use of hotels during PMC gatherings. Thus, a jury could rationally conclude from the evidence that PMC was either directly engaged in or substantially affected interstate commerce. *See United States v. Donovan*, 539 F. App'x 648, 660–61 (6th Cir. 2013).

(ECF No. 751, PageID.11397-98) (emphasis added.)

Since the Sixth Circuit already rejected the argument that the government was required to prove any individual defendant's direct engagement in interstate commerce to sustain his conviction on the RICO conspiracy charge, Sorrell's first claim is not properly before the Court either as a standalone argument or as a claim for ineffective assistance of counsel. *DuPont*, 76 F.3d at 110.

But, even on the merits, Sorrell's argument gets him nowhere. Again, the government merely had to prove that the enterprise "as a whole" engaged in interstate

commerce or engaged in activity that affected interstate commerce. Paying money toward a national fund, transporting stolen motorcycles across state lines, and using hotels to host PMC gatherings clearly satisfies that requirement. Moreover, as to any individual defendant, the government must only prove that he had "some part in directing the enterprise's affairs," which "can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)); *see also Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793 (6th Cir. 2012). As the Sixth Circuit noted, the jury heard testimony that Sorrell shot rival gang member McGee after the Phantoms' President, Johnson, instructed Sorrell and other members to take the rival gang's "rags." Neither Sorrell's trial or appellate counsel can be said to have acted in an objectively unreasonable manner by failing to raise this issue which had no basis in law or fact, and any failure to do so did not prejudice Sorrell. *Wolfe v. Westbrooks*, No. 3:14-CV-1575, 2019 WL 1242701, at *3 (M.D. Tenn. Mar. 18, 2019) ("Under *Strickland v. Washington* [], a trial attorney is not required to advance nonmeritorious defenses."); *Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020) ("Of course, failing to raise wholly meritless claims is neither deficient nor prejudicial.").

  For all of these reasons, Sorrell is entitled to no relief on this argument.

   ii. *Ground Four – Ineffective Assistance of Counsel Regarding Inconsistent State Court Testimony*

  Sorrell also argues that his trial counsel was ineffective for "failing to present the state court proceedings testimony of the alleged victim [McGee] to the federal jury." (ECF

No. 774, PageID.11496.)  But the entirety of Sorrell's argument is that his attorney "knew of the changed statements and misidentification of me by the alleged victim [McGee] due to state court records were [sic] he gave a different story to the state police officers than in federal court." (*Id.*)

The government persuasively argues that this claim fails because it is conclusory in nature and lacking any salient details.  For instance, Sorrell doesn't specify anything about McGee's alleged prior statements, or how they are inconsistent with his trial testimony. As the Sixth Circuit has explained, "conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255." *Jefferson v. United States*, 780 F.3d 537, 547 (6th Cir. 2013.)  Moreover, Sorrell's argument ignores the recordings discussed above in which he makes admissions about having shot McGee.

For all of these reasons, Sorrell is entitled to no relief on this argument.

### iii.   Grounds Two and Three – Challenges Regarding § 924(c) Conviction

Grounds Two and Three of Sorrell's § 2255 motion relate to his conviction for violating 18 U.S.C. § 924(c), Use and Carry of a Firearm During and in Relation to a Crime of Violence.  The Court will address each of Sorrell's various arguments in turn.

### a.  No Weapon Produced at Trial

First, Sorrell argues, "I was charged with a gun crime but there is no weapon that was offered into evidence . . ." (ECF No. 774, PageID.11493.)  This argument fails because no law, Rule of Criminal Procedure, or Rule of Evidence obligated the government to offer a firearm into evidence to sustain the § 924(c) conviction against Sorrell.  Moreover,

McGee testified that he was shot during an attack by the Phantoms, and a bullet fragment from the shooting was offered into evidence.  (ECF No. 439, PageID.2482-83, 2489-90.)  And, the Sixth Circuit has already held, "there is overwhelming evidence—including Sorrell's own statements caught on recording—that Sorrell actually shot McGee."  (ECF No. 751, PageID.11406.)  Cleary, the foregoing is more than sufficient evidence to support the § 924(c) conviction against Sorrell.  *United States v. Lowe*, 795 F.3d 519, 522–23 (6th Cir. 2015); *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010).

### b.  No Prior Conviction

Sorrell also challenges his § 924(c) conviction on the grounds that he "did not have a prior conviction to trigger a violation of this statute . . ."  (ECF No. 774, PageID.11495.)  This argument fails because the crime he was convicted of does not include as an element having a prior conviction.[3]  Rather, § 924(c)(1)(A) provides:

> any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

---

[3] Sorrell perhaps is confusing the offense for which he was convicted – 18 U.S.C. § 924(c) – with being a felon in possession of a firearm, which is prohibited by 18 U.S.C. § 922(g)(1).  That statute provides, "It shall be unlawful for any person – (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . ."

> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c).

Because the statute for which Sorrell was convicted does not have as an element that the defendant had a prior conviction, he is not entitled to any relief on this argument.

### c. Structural Challenges

In his § 2255 motion, Sorrell also mounts structural challenges to his § 924(c) conviction in Count Seven. Specifically, he argues that he was not "charged with a prerequisite crime that would trigger the statute," and similarly that there was no "substantive offense which was committed to trigger the statute." (ECF No. 774, PageID.11493-94.) The Court understands Sorrell to be arguing that the predicate charge underlying the § 924(c) charge – assault with a dangerous weapon – is not a "crime of violence" under the statute's "elements" clause.

Count Seven charged Sorrell with violating 18 U.S.C. § 924(c), Use and Carry of a Firearm During, and in Relation to a Crime of Violence. The predicate offense for Count Seven, *i.e.*, the conduct constituting a "crime of violence," was the conduct underlying Count Five, Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(3) §2, and Count Six, Conspiracy to Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1956(a)(6). (ECF No. 201, PageID.1680) (specifically referencing the assault "alleged in Counts Five and Six . . ." as the predicate offense for the § 924(c) Count Seven charge) Those two Counts make clear that the charges relate to the shooting of McGee. (*Id.*, PageID.1678-80.) Thus, the Court

must examine the underlying "predicate offenses" to the § 924(c) charge against Sorrell to determine whether they constitute "crimes of violence."

> The term "crime of violence" is defined, for purposes of § 924(c), as a felony that:
>
>> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>>
>> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A), (B).

These two clauses in § 924(c) have been coined the "elements clause" (§ 924(c)(3)(A)) and the "residual clause" (§ 924(c)(3)(B)). In *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), the U.S. Supreme Court held that the residual clause is unconstitutionally vague and therefore invalid; however, the elements clause remains intact. The Court thus proceeds to analyze Sorrell's arguments only under the elements clause, which requires the Court to apply an "elements-based categorical approach" rather than consider "the specific means by which the defendant committed the crime." *United States v. Evans*, 848 F.3d 242, 245-46 (4th Cir. 2017); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015).

Both of the crimes underlying Sorrell's § 924(c) charge qualify as crimes of violence under § 924(c)(3)(A)'s force clause. In Count Five, Sorrell was charged with Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. §§ 1959(a)(3); 2. (ECF No. 201, PageID.1678.) That charge of the indictment specifically alleges that Sorrell (and the other co-defendants) "did, for the purpose of maintaining and increasing

16

position in the Phantoms, an enterprise engaged in racketeering activity, knowingly and unlawfully assault L.M. [*i.e.*, McGee] with a dangerous weapon; in violation of Michigan Compiled Laws, Sections 750.82 and 767.39." (*Id.*, PageID.1678-79.)   In Count Six, Sorrell was charged with Conspiracy to Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(6).   (*Id.*, PageID.1679.)   As to that charge, the indictment alleges that Sorrell (and his co-defendants) "did, for the purpose of maintaining and increasing position in the Phantoms, an enterprise engaged in racketeering activity, knowingly and unlawfully conspire to assault members of the Satan Sidekicks with a dangerous weapon, in violation of Michigan Compiled Laws, Sections 750.82, 750.157a(a), and 767.39." (*Id.*, PageID.1679-80.)

Turning to the §§ 1959(a)(3), (a)(6) charges involving assault with a dangerous weapon in violation of Michigan law, the Court notes that Michigan defines assault with a dangerous weapon as an assault of "another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or inflict great bodily harm less than murder."  M.C.L. § 750.82(1).  The elements are as follows: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery."  *People v. Jackson*, 487 Mich. 783, 790 (2010).  It has been well established that Michigan's charge of assault with a dangerous weapon—otherwise known as "felonious assault"— qualifies as a "crime of violence" under the elements clause, because one cannot assault a person, or jeopardize his or her life with a dangerous weapon, unless one uses, attempts to use, or threatens physical force.  *See Harris v. United States*, 853 F.3d 318, 320 (6th Cir. 2017); *United*

17

*States v. Walker*, 14-cr-20388, 2017 WL 131554 (E.D. Mich., Jan. 13, 2017) (holding, "[b]ecause felonious assault in Michigan necessarily has an element the use, attempted use, or threatened use of physical force against the person of another, it [is] properly counted as a crime of violence, and Defendant is not entitled to resentencing."); *United States v. Woods*, 336 F. Supp. 3d 817, 824 (E.D. Mich. 2018).

Thus, the predicate offenses involving assault with a dangerous weapon categorically qualify as crimes of violence under 18 U.S.C. § 924(c)(3)(A), and support Sorrell's conviction on Count Seven.

In his supplemental filings, Sorrell makes additional arguments not specifically presented in his § 2255 motion. First, Sorrell argues that he is "seeking to obtain relief from this Honorable Court in light of *Davis*." (ECF No. 822, PageID.11736.) As explained above, however, *Davis* merely held that § 924(c)(3)(B)'s "residual" clause is unconstitutionally vague and therefore invalid; however, the elements clause remains intact. *Davis*, 139 S. Ct. at 2336. The Court's above analysis is based entirely on § 924(c)(3)(A)'s "elements" clause. Thus, *Davis* is not helpful to Sorrell.

Sorrell also argues that his "conviction was predicated on multiple offenses, where the jury's general verdict [form] did not specify on which predicate offense(s) the 924(c) conviction was based." (ECF No. 822, PageID11739.) He goes on to clarify, "the jury's general verdict [form] did not specify on which predicate offense(s) – RICO conspiracy, Assault with a dangerous weapon in Aid of Racketeering, Conspiracy to assault with a dangerous weapon in Aid of racketeering, or Conspiracy to commit murder, -- § 924(c)

18

conviction was based and the 924(c) conviction should be vacated and set aside accordingly." (*Id.*, PageID.11739.)  This argument lacks merit.

As explained above, there were two specifically enumerated predicate offenses for the Count Seven § 924(c) charge: Count Five, Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(3) §2; and Count Six, Conspiracy to Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. § 1956(a)(6).[4]  As also explained above, both of those charges categorically qualify as crimes of violence.  Thus, Sorrell's conviction under either Count Five or Count Six satisfies the necessary predicate for his Count Seven § 924(c) conviction.  Since Sorrell was convicted on both Count Five and Count Six, it is irrelevant that the verdict form "did not specify on which predicate offense(s) the 924(c) conviction was based."

For all of these reasons, Sorrell's arguments that he is "actually innocent" of Count Seven's § 924(c) charge, or that he is entitled to any other relief as to his conviction on that Count, lack merit.

### D.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Sorrell's Motion under § 2255 to Vacate, Set Aside, or Correct Sentence **(ECF Nos. 774)** be **DENIED**.

---

[4] There was no separate predicate "RICO conspiracy" charge underlying Count Seven.  Thus, Sorrell's argument in his second supplemental filing that "[i]t is without controversy that [his] § 924(c) conviction relies upon the RICO Conspiracy and Conspiracy charges," apparently referencing the charge in Count One of the indictment (ECF No. 201, PageID.1657), is simply incorrect.  His § 924(c) conviction was based *only* on the specific conduct alleged in Counts Five and Six.

**E.     Certificate of Appealability**

When considering a § 2255 motion, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts.  A petitioner must obtain a certificate of appealability ("COA") before he may appeal the denial of his § 2255 motion.  28 U.S.C. § 2253(c)(1)(B).  A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases like Sorrell's where the petitioner's claims are rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, for all of the reasons stated above, the Court finds that Sorrell did not make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and cannot satisfy the *Slack* criteria.  Accordingly, the Court should deny Sorrell a certificate of appealability.

Dated: July 27, 2021                                    s/David R. Grand
Ann Arbor, Michigan                                DAVID R. GRAND
                                                                   United States Magistrate Judge


**<u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>**

The parties to this action may object to and seek review of this Report and Recommendation but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1), Fed. R. Crim. P. 59(b)(2), and E.D. Mich.

LR 72.1(d)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 27, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager